UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN (JACKSON) DIVISION

JOHNNY CHARLES SHORTER                                        PETITIONER

VS.                                        CIVIL ACTION NO. 3:11cv225-CWR-FKB

CHRISTOPHER EPPS                                             RESPONDENT

## REPORT AND RECOMMENDATION

This cause is before the Court on the petition of Johnny Charles Shorter for habeas

corpus relief filed pursuant to 28 U.S.C. § 2254.  At the outset, the Court notes that its review of

Shorter's conviction is circumscribed.   In other words, federal courts do not sit as "super" state

supreme courts in habeas corpus proceedings to review errors under state law.   Dickerson v.

Guste, 932 F.2d 1142, 1145 (5th Cir. 1991).   Instead, "[a] state prisoner is entitled to relief

under 28 U.S.C. § 2254 only if he is held 'in custody in violation of the Constitution or laws or

treaties of the United States.'" Engle v. Isaac, 456 U.S. 107, 110 (1981)(citing 28 U.S.C. §

2254(a)).   Guided by these fundamental principles, the Court has considered Shorter's petition,

the Respondent's answer, and all related filings.  For the reasons that follow, the undersigned

concludes that the petition is not well-taken and should be dismissed with prejudice.

## I. FACTS AND PROCEDURAL HISTORY

Shorter is currently in the custody of the Mississippi Department of Corrections

("MDOC") after being convicted of murder in the Circuit Court of Rankin County, Mississippi.

See [11-1] at 134-135.   On May 17, 2007, Shorter was sentenced to a term of life imprisonment

in the custody of the Mississippi Department of Corrections.   Id.

A review of the facts, as summarized by the Mississippi Court of Appeals, will aid in the

consideration of the petition.

¶ 3.  Shorter and his wife, Angelique Shorter, were having marital problems, and Shorter hired attorney Gill Baker to represent him in his divorce proceedings.  After the couple separated, Shorter suspected Angelique of becoming romantically involved with another man.  One night, while drinking at a local pool hall that he frequented, Shorter ran into Jim Beckman, who Shorter suspected was sleeping with Angelique.  Shorter confronted Beckman, but Beckman denied any relationship with her.  During their conversation, Shorter told Beckman he believed Angelique was involved with another man named Kenneth Boutwell.

¶ 4.  Later that night, Shorter called his attorney, Baker, and informed Baker of his intention to kill a man.  Baker understood that Shorter planned to kill Beckman and promptly called 911.  In response to the attorney's call, the Rankin County Sheriff's Department began searching for Beckman.  However, soon after the search began, Angelique called 911 and reported that Shorter had shot Boutwell.

¶ 5.  Shortly after the shooting, Shorter phoned his father-in-law, and told him he had just killed a man and was going to smoke a cigarette.  Shorter also called his sister and informed her of what he had just done.  Shorter then waited at the scene of the shooting until deputies from the sheriff's department arrived and arrested him.  After being advised of his Miranda rights, Shorter asked one of the deputies, "Is the son of a bitch I shot dead?"

Shorter v. State, 33 So. 2d 512, 515-516 (Miss. Ct. App. 2009), reh'g denied, April 27, 2010

(Cause No. 2008-KA-0112-COA).

On direct appeal to the Mississippi Court of Appeals, and Shorter raised the following

points of error:

1.    The trial court erred in admitting the 911 call of Shorter's divorce attorney, Gill Baker;

2.    The trial court erred in admitting the 911 call of Shorter's wife, Angelique;

3.    The trial court erred in refusing Instruction D-1, a manslaughter instruction; and

4.    The verdict was against the overwhelming weight of the evidence, which showed that Shorter was guilty, at most, of manslaughter.

[11-7] at 5.  The Mississippi Court of Appeals affirmed Shorter's conviction on direct appeal on

-2-

November 24, 2009.  Shorter v. State, 33 So. 2d at 524.  There is no record of further appeal to

the Mississippi Supreme Court for review of the decision.

On August 31, 2010, Shorter submitted for filing a Motion to Amend his Application for

Leave to file his Petition for Post-Conviction Collateral Relief in the trial court of Rankin

County, which was filed by the Clerk of Court on September 2, 2010. [11-8] at 31, 34.  In his

petition for post-conviction relief, Shorter raised several issues to be considered:

1.  The trial court erred and deprived Shorter of his U.S. Constitution 5th, 6th, and 14th Amendment rights to due process when it failed to have an *in camera* review of recordings and testimony of divorce attorney Gil Baker before it admitted the same into evidence and had them played to the jury.

2.  The trial court erred and deprived Shorter of his U.S. Constitutional 5th, 6th, and 14th Amendment rights when it allowed Shorter to be brought before the jury in a restraint device and failed to ensure said device was not visible to the jury, thereby undermining Shorter from receiving a fair trial.

3.  Shorter was denied his right to effective assistance of counsel at trial, as guaranteed by the 6th and 14th U.S. Constitution Amendments, when:

a.  Counsel failed to make adequate investigation into Shorter's mental state at the time of the offense and prior to trial;

b.  Counsel failed to investigate or obtain expert testimony in the field of ballistic projectory of bullets, even though counsel based a large part of his defense strategy of Shorter upon such;

c.  Counsel failed to object to Shorter being brought before the jury in a restraint device which could have prejudiced the minds of the jury against him;

d.  Counsel further failed to ensure the restraint device Shorter was being made to wear was not visible to any member of the jury;

e.  Counsel failed to object to prosecutorial misconduct which violated Shorter's 5th and 14th U.S. Constitution Amendment rights to not testify, when prosecutor Bleck made multiple statements in closing that commented on lack of Shorter's testimony and suggested the inference of guilt from Shorter's silence;

> f.  Counsel failed to object to prosecutorial misconduct when prosecutor Bleck made improper testimonial statement during closing argument; and
>
> g.  Counsel failed to object to prosecutorial misconduct during closing when prosecutor Bleck implied personal belief rather than the State's position by use of the inflammatory remark of calling Shorter a "coward" several times.
>
> 4.  Shorter's U.S. Constitution 5th and 14th Amendment rights [were] violated and Shorter was prejudiced by prosecutorial misconduct during closing;
>
> 5.  Shorter was denied his U. S. Constitution 6th and 14th Amendment rights to effective assistance of counsel when appellant counsel failed to raise the issue and challenge the trial judge's action of admitting the divorce attorney's 911 call into evidence without having an *in camera* review or listening to the content of the recordings.
>
> 6.  Shorter was denied 5th, 6th, and 14th U. S. Constitution Amendment rights to counsel of choice when defense attorney J.B. Goodsell failed to advise Shorter that he (Goodsell) was suspended from practicing law by the Mississippi Bar.

[11-8] at 35-37.

On November 9, 2010, the Mississippi Supreme Court denied the application for leave to file a petition for post-conviction collateral relief. [10-2].  The court found that "Shorter fails to meet the Strickland standard for ineffective assistance of counsel. A defendant must demonstrate that his counsel's performance was deficient *and* that the deficiency prejudiced the defense of the case.  Strickland v. Washington, 466 U.S. 668, 687 (1984)."  Id.(emphasis in original).  As to the remaining claims, the court found that those "issues are procedurally barred where they either were raised on direct appeal or could have been raised on direct appeal.  Miss. Code Ann. § 99-39-21."  Id.

In his original Petition for Writ of Habeas Corpus filed in this Court, Shorter set forth several grounds for relief, quoted as follows:

> Ground One    Shorter was denied his rights to due process and confrontation in violation

-4-

of his 5, 6, 14 Const. Amendment rights.  The trial court allowed 911 tape recordings of attorney to be played to the jury without first having an in camera review of them to determine testimonial portions from the non testimonial portions of each.

Ground Two  Shorter was denied effective assistance of counsel in violation of 5, 6 and 14 Const. Amendments.  Shorter is prejudiced by his trial attorney's failure to investigate and seek expert advice on Shorter's mental state at time of shooting, because such would have supported a manslaughter instruction for the jury to consider – thus a lesser sentence than life.

Ground Three  Shorter was denied effective assistance of counsel in violation of 5, 6 and 14 Const. Amendments.  Shorter is prejudiced by deficient performance of trial attorney failing to investigate or obtain projectile ballistics expert – especially when said attorney based a large part of his defense strategy upon such – and such resulted in failure to provide counter to State's theory.

Ground Four  Shorter was denied effective assistance of counsel in violation of 5, 6 and 14 Const. Amendments.  Shorter is prejudiced by deficient performance of trial attorney in failing to object to Shorter being made to appear in front of jury in restraint device, thereby subjecting the jury to an inference that Shorter was a danger to them.

Ground Five  Shorter was denied effective assistance of counsel in violation of 5, 6 and 14 Const. Amendments. Shorter is prejudiced by the deficient performance of his trial attorney failing to object to prosecutorial misconduct in suggesting to the jury that they should infer Shorter's guilt based upon him invoking his right not to testify.

Ground Six  Shorter was denied effective assistance of counsel in violation of 5, 6 and 14 Const. Amendments. Shorter is prejudiced by the deficient performance of his trial attorney failing to object to the prosecutorial misconduct when the prosecutor made improper testimonial statements during closing that prevented the defense rebuttal and denied the right to confront.

Ground Seven  Shorter was denied effective assistance of counsel in violation of 5, 6 and 14 Const. Amendments. Shorter is prejudiced by the deficient performance of his trial attorney failing to object to improper prejudicial remarks and name calling by prosecutor

during closing argument which denied defense a rebuttal and allowed the jury to consider such in its determination of guilt.

Ground Eight   Shorter was denied effective assistance of counsel in violation of 5, 6 and 14 Const. Amendments. Shorter was denied his right to attorney of choice when his trial attorney failed to advise Shorter that the said attorney was suspended from practicing law by the Mississippi Bar Association.

[1] at 5-18.

The State filed a Response, along with the record, and now this matter is before the Court.

## II.  DISCUSSION

### A.  Claim Barred from Habeas Review

It is well-settled that applicants seeking federal habeas relief under section 2254[1] are

---

[1]Section 2254 provides, in relevant part, that:

(b)   (1)An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that--
        (A) the applicant has exhausted the remedies available in the courts of the State; or
        (B)   (i) there is an absence of available State corrective process; or
              (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A state shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

required to exhaust all claims in state court prior to requesting federal collateral relief.  See

Coleman v. Thompson, 501 U.S. 722, 729-55 (1991); Whitehead v. Johnson, 157 F.3d 384, 387

(5th Cir. 1998).  The exhaustion requirement is satisfied when the substance of the federal habeas

claim has been fairly presented to the highest state court. Picard v. Connor, 404 U.S. 270, 275

(1971); see Mercadel v. Cain, 179 F.3d 271, 275 (5th Cir. 1999); Whitehead, 157 F.3d at 387.

The State argues that Shorter has failed to "exhaust" or present his Ground One at any

point in his direct appeal or motion for post-conviction relief.  Ground one states, as follows:

> Shorter was denied his rights to due process and confrontation in violation of his
> 5, 6, 14 Const. Amendment rights.  The trial court allowed 911 tape recordings of
> attorney to be played to the jury without first having an in camera review of them
> to determine testimonial portions from the non testimonial portions of each.

In his brief in support of his petition for habeas corpus relief, Shorter presents lengthy

arguments setting forth the various ways the trial court violated the Confrontation Clause when it

admitted the 911 tape of his divorce attorney, Gill Baker, and did so without first having an in

camera review of the tape. [2] at 10-18.  While Shorter argued on direct and state collateral

review that admittance of Baker's 911 call was error, he did not base his arguments on the

Confrontation Clause.  On direct appeal of his criminal conviction, Shorter specifically did not

challenge the trial court's decision against in camera review, Shorter, 33 So. 3d at 516 n.1, but he

challenged the trial court's admittance of Baker's 911 tape based on state court ethical rules and

attorney/client privilege, rather than an established rule of evidence.  Id. at 516.[2]  In Shorter's

---

28 U.S.C. § 2254(b-c)(1996).

[2]The Court notes that Shorter did, however, challenge the admittance of the recording of
Angelique Shorter's 911 call based on the Confrontation Clause, arguing that she was an
incompetent witness and unable to testify under Mississippi Rule of Evidence 601(a).  Rule
601(a) provides that "[i]n all instances where one spouse is a party litigant the other spouse shall
not be competent as a witness without the consent of both, except as provided in Rule 601(a)(1)

petition for post-conviction relief, [11-8] at 51, he argued that the trial court erred when it failed

to have in camera review and admitted the recordings in violation of the attorney/client privilege.

Therefore, Shorter has failed to present to the state's highest court an argument attacking the trial

court's failure to conduct in camera review of Baker's 911 tape and the tape's admittance based

on the Confrontation Clause.  Accordingly, Shorter has failed to exhaust this claim in state court.

Should Shorter try to return to state court to pursue this argument as a basis for relief,

consideration of the argument would be procedurally barred in state court because the three-year

limitations period for post-conviction relief set forth in Miss. Code Ann. § 99-39-5(2) has run.

Thus, Petitioner has technically exhausted his state court remedies on these claims. See Sones v.

Hargett,  61 F.3d 410, 415 (5th Cir. 1995).  A federal court may not review the merits of a

procedurally barred claim absent a showing either of cause for the default and actual prejudice or

that failure to address the claim would result in a miscarriage of justice.  Id.   Petitioner has made

no such showing. Accordingly, habeas review of this claim is procedurally barred.

### B.  Claims Eligible for Habeas Review

The Court next turns to examine Burton's remaining grounds for relief, consisting of

several ineffective assistance of counsel claims, Grounds Two to Eight.

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),

28 U.S.C. § 2254(d) provides:

>        (d)       An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State court shall not
> be granted with respect to any claim that was adjudicated on the merits
> in State court proceedings unless the adjudication of the claim–
>
>        (1)       resulted in a decision that was contrary to, or

---

or Rule 601(a)(2)."

> involved an unreasonable application of, clearly
> established Federal law, as determined by the
> Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an
>         unreasonable determination of the facts in light
>         of the evidence presented in the State court
>         proceeding.

The phrase "contrary to. . .clearly established Federal law," under Section 2254(d)(1), means the state court either "applie[d] a rule that contradicts the governing law set forth in our cases" or in a case with facts "materially indistinguishable from a decision of this Court" arrived at a different conclusion.  Williams v. Taylor, 529 U.S. 362, 405-406 (2000).

In Wiggins v. Smith, 539 U.S. 510 (2003), the Supreme Court "made clear that the 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts' of petitioner's case."  539 U.S. at 520 (quoting Williams, 529 U.S. at 413).  Thus, "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable–a substantially higher threshold."  Schriro v. Landrigan, 550 U.S. 465, 473 (2007). The Supreme Court has recently observed that "[i]f this standard is  difficult to meet, that is because it was meant to be." Harrington v. Richter, 131 S. Ct. 770, 786 (2011).   There is a "'highly deferential standard for evaluating state-court rulings' . . . which demands that state-court decisions be given the benefit of the doubt." Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (per curiam)(quoting Lindh v. Murphy, 521 U.S. 320, 333 n. 7).

In reviewing the state court's factual findings, including implied findings, this Court defers to the state court's factual determinations unless they were "'based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding.'" <u>Hill</u> <u>v. Johnson</u>, 210 F.3d 481, 485 (5th Cir. 2000)(quoting 28 U.S.C. § 2254(d)(2)).  "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." <u>Harrington,</u> 131 S. Ct. at 784.  In the absence of a statement of reasons from the state court, "a [federal] habeas court must determine what arguments or theories . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." <u>Id.</u> at 786.  According to the Supreme Court, this inquiry is the "'only question that matters under § 2254(d)(1).'" <u>Id.</u> (quoting <u>Lockyer v. Andrade</u>, 538 U.S. 63, 71 (2003)).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." <u>Harrington</u>, 131 S. Ct. at 786 (quoting <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664 (2004)). Although petitioner may have presented the state court with what the federal court believes to be a "strong case for relief[, it] does not mean the state court's contrary conclusion was unreasonable." <u>Id.</u>

Moreover, in order to prevail on a claim for ineffective assistance of counsel before the state court, a state criminal defendant must satisfy the two-prong test set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  In <u>Strickland</u>, the Supreme Court held that before relief can be granted for ineffective assistance of counsel, a criminal defendant must establish (1) that counsel's performance was deficient in that it fell below an objective standard of reasonable professional service; and (2) that this deficient performance prejudiced the defense such that

there is a reasonable probability that the outcome of the trial has been undermined and the result would have been different. Strickland, 466 U.S. at 687, 688.  Counsel is presumed to have given competent assistance, and a petitioner must overcome that presumption by demonstrating counsel's actions were not within the province of a reasonable trial strategy.  See id. at 689  (to prevail on claim of ineffective assistance of counsel, petitioner must demonstrate counsel's representation fell below an objective standard of reasonable competence as a result of which he was prejudiced).   A state court defendant's failure to establish both prongs of the Strickland test warrants rejection of his claims by a reviewing state court tribunal.

As previously observed, under the AEDPA, a federal habeas court evaluates the state court's determination that Shorter did not satisfy Strickland pursuant to the parameters set forth in Williams v. Taylor, 529 U.S. at 362.  That is, in order to obtain relief from a federal court on his ineffective assistance claims, Shorter must show that the state court decision regarding his claims of ineffective assistance of counsel was either "contrary to" federal law, as determined by the Supreme Court, or an "unreasonable application" of Strickland.  Harrington, 131 S. Ct. at 785.  Thus,

> [t]he pivotal question [under the AEDPA] is whether the state court's application of the Strickland standard was unreasonable.  This is different from asking whether defense counsel's performance fell below Strickland's standard.  Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court.

Id.

Further, "because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."  Knowles v. Mirzayance, 129 S. Ct. 1411, 1420 (2009).  In fact, while  § 2254(d), as amended, "stops short

of imposing a complete bar on federal litigation on claims already rejected in state court proceedings" by "preserv[ing] authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents[,] [i]t goes no farther."  Id.  Put another way, when applying Strickland and section 2254(d), review is "doubly deferential."  Knowles, 129 S. Ct. at 1420; Harrington, 131 S. Ct. at 788.

   As both the United States Supreme Court and the Fifth Circuit Court of Appeals have recognized, a criminal defendant is not constitutionally entitled to a perfect trial, just a fair one. Delaware v. Van Arsdall, 475 U.S. 673, 681 (1986); Sawyer v. Butler, 848 F.2d 582, 594 (5th Cir. 1988).  Perceived improprieties do not warrant habeas corpus relief. Turner v. Johnson, 106 F.3d 1178, 1188 (5th Cir. 1997)("The remainder of the petitioner's ineffectiveness of counsel claim consists of challenges to trial counsels' failure to object to a multitude of perceived improprieties.  Our review of the record persuades that these alleged failures either did not occur, did not constitute deficient performance, or did not affect the outcome of the trial.").

   Applying the foregoing law to Shorter's petition, the Court concludes that Shorter is not entitled to habeas relief.  Shorter has pointed to no controlling authority to which the decision in his case runs contrary.  Nor has Shorter demonstrated that the decision in his case was unreasonable in light of the evidence presented. The Court now turns to discuss Shorter's grounds for relief in detail.

### 1.  Grounds Two and Three: Failure to consult with expert witnesses regarding Shorter's mental state and ballistics

   Shorter argues that his trial counsel was ineffective, in violation of the Fifth, Sixth, and

Fourteenth Amendments, when his trial counsel failed to call expert witnesses.  In his second ground for relief, Shorter asserts that he was prejudiced when his trial counsel failed "to investigate and seek expert advice on Shorter's mental state at the time of the shooting, because such would have supported a manslaughter instruction for the jury to consider– thus a lesser sentence than life." [2] at 20.  In his third ground for relief, Shorter argues that he was prejudiced by his attorney's failure to investigate or obtain a projectile ballistics expert, especially when the attorney "based a large part of his defense strategy upon such – and such resulted in failure to provide [a] counter [argument] to the State's theory." [2] at 23.

Complaints of uncalled witnesses are not favored in a federal habeas court because the presentation of testimonial evidence is a matter of trial strategy, and because allegations of what a witness would have testified are largely speculative. McCoy v. Cabana, 794 F.2d 177, 183 (5th Cir. 1986); Murray v. Maggio, 736 F.2d 279, 282 (5th Cir. 1984).  To prevail on an ineffective assistance of counsel claim based on counsel's failure to call a witness, either lay or expert, "the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense."  Day v. Quarterman, 566 F.3d 527, 538 (5th Cir. 2009).

Shorter has failed to meet any of the foregoing criteria for either of his arguments regarding the failure of his counsel to call expert witnesses.  Specifically, Shorter has failed to present experts' names, show that they were available at the time of trial, proffer the substance of their testimony, and show how the testimony would have been favorable to a particular defense. He has simply argued, in broad terms, that his attorney failed to call expert witnesses. Such

supposed testimony is pure speculation and without any evidentiary basis.  Accordingly, Shorter

has failed to show that his counsel's actions were deficient or prejudiced his defense.  Thus, the

Mississippi Supreme Court's application of <u>Strickland</u> was neither contrary to federal law nor an

unreasonable application of <u>Strickland</u>. Accordingly, these contentions are without merit, and

these arguments fail to provide a basis for habeas relief.

> 2.  Ground Four: Failure to object to restraint devices for Shorter during trial

Shorter argues that his trial counsel was ineffective, in violation of the Fifth, Sixth, and

Fourteenth Amendments, when he failed to object to Shorter's being made to wear leg restraints

in front of the jury.  Shorter argues that his wearing of leg restraints subjected the jury to an

inference that he was a danger to them.  Shorter also intimates that his decision not to testify in

his own behalf was in part influenced by the fact that he would have to walk to the witness stand

in leg restraints, in full view of the jury. Shorter argues that this ground alone provides a basis

for vacation of his conviction and remand for a new trial.

The State responds that there is nothing in the record to support Shorter's contention that

he was shackled, or that the jury was aware that he was shackled or confined by a restraint

device.  Indeed, the Court has reviewed the record and cannot find any reference to restraint

devices being worn by Shorter during the trial itself.  Moreover, Shorter himself did not

complain on the record, nor did he raise this as an issue in the direct appeal of his conviction,

which was not handled by his trial counsel.

To be sure, "[s]hackling of a defendant is prohibited unless 'justified by an essential state

interest such as the interest of courtroom security.'" <u>Hatten v. Quarterman</u>, 570 F.3d 595, 603

(5th Cir. 2009)(quoting <u>Deck v. Missouri</u>, 544 U.S. 622, 624 (2005)).  However, in this posture

of habeas review, the Court does not sit in the position of reviewing the constitutionality of Shorter's being made to wear a restraint device on his legs during trial.  Rather, in its current posture, the Court must determine whether the Mississippi Supreme Court's decision finding that Shorter's claim that his counsel's failure to object to his legs being shackled did not meet the Strickland standard for ineffective assistance of counsel was either "contrary to" federal law, as determined by the Supreme Court, or an "unreasonable application" of Strickland.  Harrington, 131 S. Ct. at 785.

On collateral review of a state court conviction, a federal court reviewing the restraint device argument itself as a ground for relief only grants a writ when an error at trial had a "substantial and injurious effect or influence in determining the jury's verdict." Hatten, 570 F.3d at 604 (quoting Fry v. Pliler, 551 U.S. 112, 121-22 (2007))(internal quotation marks omitted). It follows, therefore, that if Shorter cannot show that the alleged shackling error had a "substantial and injurious effect or influence in determining the jury's verdict," then there can be no prejudice resulting from his attorney's alleged failure to object to his being placed in leg restraints in front of the jury.

The Fifth Circuit has found that overwhelming evidence of guilt can show beyond a reasonable doubt[3] that a shackling error was not prejudicial.  Id. In Shorter's case, there is overwhelming evidence of his guilt to prove beyond a reasonable doubt that any alleged wearing of leg shackles did not contribute to the jury's verdict.   In the direct appeal of his conviction, the Mississippi Court of Appeals found that there was "abundant" evidence of Shorter's guilt, even without considering the tape of Angelique Shorter's 911 call.  The Court of Appeals listed the

---

[3]The Court notes that the "beyond a reasonable doubt" standard is what the state must prove on direct review, not collateral habeas review.  Hatten, 570 F.3d at 603-604.

evidence supporting Shorter's guilt, as follows:

> Baker's 911 call to warn that Shorter was about to murder someone, Shorter's confessions after committing the crime to both his father-in-law and his sister, and Shorter's questioning one of the officers about whether the "son of a bitch" he had shot was dead. There was also physical evidence matching Shorter's weapon to the projectiles found in [the victim's] body, which further established Shorter's guilt.

Shorter, 33 So.3d at 523. Furthermore, Angelique Shorter identified Shorter as the person who had shot the victim in her 911 call to authorities. Accordingly, because there is overwhelming evidence of Shorter's guilt, the Court concludes that if Shorter was made to wear leg shackles in front of the jury, the shackling did not produce a "substantial and injurious effect or influence in determining the jury's verdict." Accordingly, there can be no prejudice resulting from his attorney's alleged failure to object to his being placed in leg restraints in front of the jury, and the Mississippi Supreme Court did not unreasonably apply Strickland when it found that Shorter failed to meet the Strickland standard for ineffective assistance of counsel on this issue. Therefore, this argument does not form the basis of habeas relief.

### 3. Ground Five: Failure to object to prosecutorial statements regarding Shorter's decision not to testify

Shorter next argues that he was prejudiced by his trial counsel's failure to object, during the prosecutor's closing rebuttal, to "prosecutorial misconduct in suggesting to the jury that they should infer Shorter's guilt from his invoking his right not to testify. These statements occurred no less than three times." [2] at 30.

The State responds that the prosecutor's comments during closing did not fall outside the

"area of legitimate comment"[4] that a prosecutor is allowed, therefore, there was no basis on which counsel could have lodged an objection.  The State also points out that defense counsel successfully argued to have a jury instruction presented to the jury that stated "the jury must not consider the fact that the defendant did not testify in this case as evidence against him nor does this fact arouse even a suspicion that he is guilty." [11-1] at 126.  The State further highlights that in closing argument, Shorter's defense counsel specifically stated, "And as far as him not testifying, as the Court said, I advised him not to.  You can't hold it against him." [11-6] at 41-42.

Petitioner references pages 429 to 431 of the trial transcript as containing the offending three references, and he attaches page 429 as Exhibit H to his petition, with certain remarks underlined.  The page that includes the allegedly offending closing remarks of the prosecutor reads, in large part, as follows:

> Well, y'all have got to infer a few things.  But one of things you've got to infer, see this weapon here?  This weapon was sold to the Defendant, Johnny Charles Shorter; put in his possession.  There is no testimony.  There is no evidence it ever left his possession.  No testimony.  No evidence it was ever any place else.
>
> But there is some testimony about where it was when it shot Ken Boutwell.  The Defendant told the officers it was in his hand.  "Did the man I shot die?  I shot the wrong one.  I'm was [sic] going to go shoot him."
>
> We know where this gun was when it shot, and we know at 1:06, when he called Gill Baker, he had already decided to kill him.
>
> Now, we know from the autopsy report that somewhere between 1:30 and 1:40 [is] when Mr. Boutwell died.  Mr. Boutwell, who got up on this day, not knowing anything that was going to happen, Mr. Boutwell, who did nothing, but let a – leave a man – leave his wife at his house while he tried to reconcile with her.  We

---

[4]United States v. Robinson, 485 U.S. 25, 32-33 and n.5 (1988)(noting that a "reference to the defendant's failure to take the witness stand may, in context, be perfectly proper")(citations omitted).

know he's dead here lying in a pool of blood in the floor of his own home.

[1-1] at 67 (emphasis in Petitioner's original exhibit).  Petitioner did not attach pages 430-431 to

his Petition with the allegedly offending remarks underlined, therefore the Court is left to

wonder what remarks Shorter found offensive on those pages.

However, combing through pages 430-431 of the prosecutor's closing, the Court finds

certain remarks by the prosecutor that Petitioner may have found offensive, as they are similar to

the above remarks:

> Ladies and gentlemen, they want to imply that someone else shot the shot.  Who
> else was in the room? Well, we know from the evidence he was in the room.  He's
> told us he was in the room.  He told the officers that he was in the room.  Has
> there ever been any testimony that anyone else was in that room other than those
> two folks?  Have [sic] there ever been any testimony?  You've got to consider the
> testimony.

[11-6] at 46-47.

In analyzing whether the remarks of prosecutors violate the Fifth Amendment, the Court

must evaluate the comments in the context of the trial.  Walker v. Epps, 2012 WL 1033467, *32

(S.D. Miss. Mar. 27, 2012)(Starrett, J.)(citing United States v. Robinson, 485 U.S. 25, 33

(1988)).  "In Robinson, the Supreme Court retreated from the interpretation of Griffin [v.

California, 380 U.S. 609 (1965)] . . . that any direct reference to the defendant's failure to testify

violated the defendant's rights under the Fifth Amendment."  Walker, 2012 WL 1033467, *32.

Instead, the Fifth Circuit has arrived at a test the district court should use to analyze the

prosecutor's remarks.  When faced with this issue, the Court must ask two questions:

> (1) whether the prosecutor's manifest intent was to comment on the defendant's
> failure to testify; and
>
> (2) whether the jury would necessarily have construed the remark as such a
> comment.

Id. (citing Cotton v. Cockrell, 343 F.3d 746, 751 (5th Cir. 2003)).  If the answer is "yes" to either question, the defendant's constitutional rights have been violated.  Id.  The court must keep in mind that "'[t]he prosecutor's intent is not manifest if there is some other, equally plausible explanation for the remark.'" Cotton, 343 F.3d at 751 (quoting United States v. Grosz, 76 F.3d 1318, 1326 (5th Cir. 1996)).  Furthermore, as stated above, "challenged comments are evaluated in the context of the trial within which they are made." Id.

In this case, the answer to both questions is "no."  Viewing the comments in the context of the closing argument, it appears that the prosecutor was commenting on the lack of evidence to rebut the fact that the gun used in the murder had been sold to Shorter, not specifically on Shorter's failure to testify.  Immediately thereafter, the prosecutor then moved on to relate statements in evidence that Shorter had made to law enforcement at the scene of the crime and that linked him to the gun. This reference to lack of testimony was, at most, a passing reference to the lack of an evidentiary foundation rebutting the State's proof that the gun belonged to Shorter, not to Shorter's decision not to testify.

Turning to the second question as to whether a jury would have construed the remark as a comment on Shorter's decision not to testify, the answer again is "no."  "As for whether a jury would naturally and necessarily construe a remark as a comment on the defendant's failure to testify, 'the question is not whether the jury possibly or even probably would view the challenged remark in this manner, but whether the jury necessarily would have done so.'" Cotton, 343 F.3d at 751 (quoting Grosz, 76 F.3d at 1326)(other citations omitted)(emphasis added).  The prosecutor was simply in the process of summing up the testimony in the record that pointed toward Shorter's guilt.  He did not draw attention to or specifically say that Shorter

did not testify.  Instead, this was "an isolated comment in a sea of evidence" incriminating Shorter for the murder.  Id. at 752 (citations omitted).  Accordingly, once again, viewing the comments in the context of the lengthy rebuttal, the court is left with the firm impression that the jury would not necessarily have viewed this as a comment on Shorter's decision not to testify.

Thus, because there was no basis for an objection, Shorter can show neither a deficiency or prejudice in his counsel's actions, and therefore, he cannot meet either prong of Strickland.  It follows, therefore, that the Mississippi Supreme Court's application of Strickland was not unreasonable and, accordingly, this claim fails to form the basis of habeas relief.

### 4.  Ground Six: Counsel's failure to object to improper

### testimonial remarks by prosecutor in closing

Petitioner next argues that Shorter was denied effective assistance of counsel in violation of the Fifth, Sixth, and Fourteenth Amendments, and he suffered prejudice, when his trial counsel failed to object to improper testimonial remarks made by the prosecutor during the closing that prevented defense rebuttal and denied his right to confront.   In particular, Shorter argues that the following statements, directly following the excerpt quoted above in Section 3, were improper:

> You know, I was talking about this earlier in the day, one of the bailiffs, and he said to me, one of them said she – says he's going to kill him.  It doesn't take long to get there.  What happened in here? We don't know.  Why – if you – if a man goes to another man's house in the middle of the night, why did he wait so long to shoot him?

[1-1] at 68-69 (emphasis added by Petitioner).

While Shorter argues that the remarks are improper, he does so in conclusory fashion, failing to demonstrate how these remarks, albeit unusual, are improper and rise to the level of

being constitutionally infirm.

As stated in a case relied upon by Shorter,

it "is not enough that the prosecutors' remarks were undesirable or even universally condemned." The relevant question is whether the prosecutors' comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Moreover, the appropriate standard of review for such claim on writ of habeas corpus is "the narrow one of due process, and not the broad exercise of supervisory power."

Darden v. Wainwright, 477 U.S. 168, 181 (1986)(citations omitted). The Court must consider that "the remark 'is but one of several components of the trial which may result in the judgment of conviction.'" Simmons v. Epps, 2008 WL 4446615, *54 (S.D. Miss. Sept. 26, 2008) (Ozerden, J.)(quoting Donnelly v. DeChristoforo, 416 U.S. 637, 645 (1974)). This Court is also required to "look at the entire record to determine the impact of the prosecutor's allegedly prejudicial statements." Simmons, 2008 WL 4446615 at *55. Furthermore, the Court must consider what effect the prosecutor's remarks "'would have on the jury's ability to judge the evidence fairly.'" Id.(quoting United States v. Young, 470 U.S. 1, 12 (1985)).

Under these standards, the prosecutor's careless insertion of a bystander's remarks summarizing the time line of the evidence did not "so infect the trial with unfairness as to make the resulting conviction a denial of due process." Darden, 477 U.S. at 181. These fleeting remarks, while memorialized in the transcript to be studied and pored over by Petitioner, were only that: fleeting remarks. When viewed in the context of the entire closing, they are minuscule. Furthermore, as in Darden, the overwhelming weight of the evidence[5] supporting Shorter's guilt "reduced the likelihood that the jury's decision was influenced by argument." Id. Accordingly, these remarks did not deny his right to due process and, therefore, he did not suffer

[5]See Section 2 *supra*.

ineffective assistance of counsel when his attorney did not object to them.  Accordingly, the
Mississippi Supreme Court's application of <u>Strickland</u> was reasonable, and this argument fails to
form the basis of habeas relief.

5.  Ground Seven: Counsel's failure to object to improper

<u>remarks and name calling by prosecutor in closing</u>

Shorter argues that he was prejudiced by the deficient performance of his trial counsel
when he failed to object to "prosecutorial misconduct when the prosecutor made improper
prejudicial remarks and name-calling during closing that prevented the defense rebuttal and
allowed the jury to consider such in its determination of guilt." [2] at 34.  Shorter argues that his
counsel's conduct fell below ABA professional standards stating that defense counsel has a duty
to object to prejudicial remarks of the prosecutor.  Shorter also asserts that by presenting his
"personal, prejudicial beliefs," the prosecutor "trampled" Shorter's due process rights.  <u>Id.</u>

In support of this argument, Shorter attached portions of the trial transcript and
underlined the prosecutor's remarks at issue.  [1-1] at 70-72.  The relevant portions of the
transcript and the remarks underlined by Shorter are as follows:

> Well, let me tell you.  Number one: He didn't show him the gun when he was at
> the door. We can infer that because nobody's going to open the door for a man
> with a gun.  Are you going to open the door for somebody with a gun in the
> middle of the night?  Huh-uh. (Negative response.)
>
> He took this gun and he secreted it.  He hid it.  Then he got inside.  <u>But, ladies
> and gentlemen, that Defendant is not a brave man.  He is a coward.  He is an
> absolute coward because he didn't shoot him as soon as he got there.</u>  He didn't
> walk through the door and say, Bang.  You're dead.  No.  He wasn't going to give
> him a fair shot.  He wasn't going to give him a fair chance.
>
> ***
>
> Talk about reasonable doubt.  There is no reasonable doubt in this case.  There is

-22-

no doubt at all.  <u>That man right there in a cold, calculated and cowardly act killed</u> <u>a</u> human being, Mr. Ken Boutwell, who was doing him a favor [by] putting his wife up until such time as they could reconcile.  He changed his mind.  In the dead of night, he goes, he's lead [sic] into that house.  There's no sign of forced entry.  We know he was let in there.  He was allowed in that house as a friend.  Once he got in, he didn't shoot Mr. Boutwell right away.  He waited until he turned his back and <u>in an act of cowardness shot him</u> fatally in the back.

Ladies and gentlemen, there are no questions in this case.  I ask you go back to the jury room and please return a verdict of guilty of murder as charged.  Thank you, your honor.

[1-1] at 70-72 (portions omitted)(emphasis added by Petitioner).

Once again, the standard of review employed by this Court is whether the Mississippi

Supreme Court reasonably applied <u>Strickland</u> to its review of this ground for relief.  The Court

must first look at the remarks to determine if they were prejudicial, and then the Court will

consider whether <u>Strickland</u> required an objection.

The Fifth Circuit has developed a test to evaluate prosecutorial remarks in the direct

criminal appeal context.  In <u>United States v. Fields</u>, 72 F.3d 1200 (5th Cir. 1996), the Fifth

Circuit considered whether prosecutorial remarks prejudiced a defendant's trial.  The Fifth

Circuit found, as follows:

> In reviewing a claim of prosecutorial misconduct, this Court first determines whether the prosecutor's remarks were improper and, second, whether they prejudicially affected the substantive rights of the defendant. Consideration is given to 1) the magnitude of the prejudicial effect of the statements; 2) the efficacy of any cautionary instruction given; and 3) the strength of the evidence of the defendant's guilt. The magnitude of the prejudicial effect is tested by looking at the prosecutor's remarks in the context of the trial in which they were made and attempting to elucidate their intended effect.

<u>Fields</u>, 72 F.3d at 1207(in direct appeal context); <u>see</u> <u>also</u> <u>White v. Kelly</u>, 2007 WL 655754

(S.D. Miss. Feb. 27, 2007)(Russell, J.)(in habeas corpus context).  Moreover, in closing

argument the prosecutor is not "prohibited from 'recit[ing] to the jury those inferences and

-23-

conclusions he wishes [the jury] to draw from the evidence so long as those inferences are grounded upon evidence.'" United States v. Munoz, 150 F.3d 401, 414 (5 th Cir. 1998)(quoting United States v. Washington, 44 F.3d 1271, 1278 (5th Cir.), cert. denied, 514 U.S. 1132 (1995)).

In this case, the prosecutor's remarks were presented in the context of the State's theory of the case.  That is, the prosecutors presented evidence that Shorter had contemplated the crime and acted upon this contemplation by shooting the unarmed victim, Boutwell, after Shorter was allowed free entry into Boutwell's home around 1:00 a.m. in the morning on September 6, 2006. The State pursued this theory by presenting a witness who testified that on the day of the murder, Shorter had questioned the witness directly about whether the witness had had an affair with Shorter's wife. [11-4] at 105-107. The State presented evidence of late night 911 calls from Shorter's divorce attorney relating that Shorter was searching for the man he believed to be having an affair with his wife, and that he planned to kill him. [11-5] at 66.  The State presented the 911 call from Angelique Shorter in which she identified Shorter as the person who had shot the victim. [11-5] at 18; Shorter, 33 So.3d at 522.  The State also presented forensic evidence to show that of the two bullet wounds that caused the victim's death, one bullet entered through the victim's back, and another bullet entered under the right armpit. [11-5] at 36-37.  Additionally, the State presented evidence that Shorter owned the gun that fired the bullets, [11-5] at 72-74, and the State presented testimony of witnesses, Shorter's father-in-law and his sister, to whom he called confessing the crime.  [11-5] at 106-107; [11-5] at 69-70. Finally, the State presented testimony from an officer to whom Shorter said, "Is the son of a bitch I shot dead?" [11-4] at 41.

Given the context of the evidence presented, the prosecutor's remarks, relating that Petitioner had shot an unarmed man in the back while he was in his home, were not improper.

These were but a few remarks in the midst of a long closing that was grounded in evidence demonstrating the late night shooting of an unarmed man once in the back and once under the right armpit, while he was in his home.  Furthermore, Shorter's substantive rights were not "prejudicially affected" by these remarks.  "[T]he characterization of 'coward' does not have the specific legal connotation of a description like 'fugitive' and carries no risk of being misconstrued as a legal conclusion."  United States v. Diecidue, 603 F.2d 535, 553 (5th Cir. 1979)(finding that remarks characterizing the defendants as "cowards" were not the "'type of shorthand characterization of an accused, not based on evidence, (which) is especially likely to stick in the minds of the jury and influence its deliberations.'")(quoting Hall v. United States, 419 F.2d 582, 587 (5th Cir. 1969)); see also United States v. Muriel, 48 Fed. Appx. 102 (5th Cir. 2002)(unpublished)(citing Diecidue).  "Unflattering characterizations of defendants are not reversible error when supported by the evidence."  Diecidue, 603 F.3d at 553.  Accordingly, the Court finds that trial counsel was not deficient, nor did Shorter suffer prejudice under Strickland, when trial counsel did not object to these remarks.  Therefore, it follows that the Mississippi Supreme Court's application of Strickland was not unreasonable, and this ground does not form the basis for habeas relief.

      6.  Ground Eight: Counsel's failure to advise Shorter regarding his Bar suspension

      Finally, Shorter complains that he was denied counsel of his choice, in violation of the Fifth, Sixth, and Fourteenth Amendments, when his trial attorney failed to advise him that he had been suspended from practicing law by the Mississippi Bar Association.  He argues that his counsel's failure to advise him of the suspension demonstrated deficient performance, which resulted in Shorter's inability to determine whether his counsel was the "best" for his defense.

He further argues that this is a "structural error" in a criminal proceeding and not subject to harmless error analysis.

The Fifth Circuit has "declined to apply a *per se* ineffectiveness rule in situations involving unlicensed attorneys." Ybarra v. Quarterman, 200 Fed. Appx. 341 (5th Cir. 2006)(unpublished)(citing United States v. Maria-Martinez, 143 F.3d 914 (5th Cir. 1998)). In Maria-Martinez, the Fifth Circuit considered a *per se* ineffectiveness rule for improperly credentialed lawyers and concluded that a technical failure to meet requirements should be viewed differently than a demonstrated lack of legal knowledge. Maria-Martinez, 143 F.3d at 917. After much discussion, the court ultimately concluded that an arbitrary rule would not lead to the right result, and, instead, such cases alleging ineffective assistance of counsel based on improperly credentialed lawyers should be evaluated using the Strickland standard.

In this case, trial counsel's suspension from the Mississippi Bar was effective January 16, 2007, solely based upon his failure to pay his annual enrollment fees. [1-1] at 73. Upon trial counsel's payment of his dues and a resulting penalty, he was reinstated as a member of the Mississippi Bar on February 13, 2007. [1-1] at 75. The State acknowledges that counsel was suspended at the time of Shorter's indictment and his arraignment. However, the State points out that a licensed attorney assisted Shorter at his waiver of arraignment and entry of plea on February 12, 2007, and signed the related documents of record on behalf of his trial counsel. [11-1] at 16-17. Trial counsel's suspension was lifted on the following day, February 13, 2007, and there is nothing in the record to indicate that he was not in good standing with the Mississippi Bar at the time of Shorter's trial in May 2007. Shorter fails to demonstrate how his trial counsel's brief suspension, based on a technical failure to pay bar dues, and not due to any lack

of legal knowledge, equates to prejudice or resulted in deficient performance.  A licensed attorney represented him on his trial counsel's behalf at the arraignment, and the trial transcript demonstrates that trial counsel was a zealous advocate for his client.  Accordingly, the Mississippi Supreme Court did not unreasonably apply Strickland when it found that Shorter's counsel was not ineffective, and, therefore, this ground does not form the basis for habeas relief.

### III. CONCLUSION

Accordingly, for the reasons stated above, Shorter's petition for habeas corpus relief should be denied, and this case should be dismissed with prejudice.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C. §636, Douglass v. United Services Automobile Association, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

RESPECTFULLY SUBMITTED, this the 18th day of June, 2014.


    /s/  F. Keith Ball
    UNITED STATES MAGSTRATE JUDGE